IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

CHERYL EDLEY-WORFORD,
Plaintiff,

v.   Civil No. 3:19cv647 (DJN)

VIRGINIA CONFERENCE OF
THE UNITED METHODIST CHURCH,
Defendant.

## MEMORANDUM OPINION

Plaintiff Cheryl Edley-Worford ("Plaintiff") brings this action against The Virginia Conference of the United Methodist Church ("Defendant" or the "Conference"), alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq* ("Title VII") and Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"). This matter comes before the Court on Defendant's Second Motion to Dismiss (ECF No. 13), moving to dismiss Plaintiff's claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative, for failure to state a claim pursuant to Rule 12(b)(6). For the reasons set forth below, the Court DENIES Defendant's Second Motion to Dismiss (ECF No. 13).

### I. BACKGROUND

In considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), a court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). Further, when a court

considers a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a court will accept a plaintiff's allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.2d 1130, 1134 (4th Cir. 1993). For the purpose of background, the Court considers the following facts that Plaintiff alleges in her Amended Complaint.

### A. Facts Alleged.

Plaintiff is a 61-year-old African-American woman residing in Virginia. (Am. Compl. (ECF No. 1-1) ¶¶ 6, 12.) Defendant is a sub-organization of the United Methodist Church located in the Commonwealth of Virginia. (Am. Compl. ¶ 5.) On September 2, 2014, the Conference hired Plaintiff as the Director of Inclusivity and Lay Leadership Excellence. (Am. Compl. ¶¶ 6, 13.) The Conference terminated Plaintiff's employment on October 23, 2017. (Am. Compl. ¶ 6.)

Plaintiff alleges that the Conference requires that a lay person fill the position of Director of Inclusivity and Lay Leadership Excellence. (Am. Compl ¶ 14.) Further, she states that the position did not require her to lead a church or congregation. (Am. Compl. ¶ 14.) As director, she contends that she had no ministerial authority to instruct others in their Methodist faith. (Am. Compl. ¶ 15.) Plaintiff asserts that she was an administrator "charged with coordinating logistics, but [that] she was not responsible for teaching or personifying the beliefs of the Conference." (Am. Compl. ¶ 15.)

In her Amended Complaint, Plaintiff states that throughout the course of her employment, she "performed well and was evaluated favorably." (Am. Compl. ¶ 17.) However, she states that during the first year of her employment with the Conference, she noticed that she was given more areas of responsibility than her Caucasian co-workers, "relative to the resources

with which she was asked to fulfill them." (Am. Compl. ¶ 18.) Plaintiff further asserts that nearly all of her co-workers were Caucasian. (Am. Compl. ¶ 20.)

Plaintiff states that the workload disparity became obvious in Summer 2015. (Am. Compl. ¶ 21.) In the Fall of 2016, Plaintiff approached Reverend Marc Brown ("Brown"), Plaintiff's supervisor and Director of Connectional Ministries, and Shirly Cauffman ("Cauffman"), the Chair of the Conference's Personnel Committee, about her concerns. (Am. Compl. ¶ 22.) Neither Brown nor Cauffman provided any meaningful response to Plaintiff's concerns about workload disparity. (Am. Compl. ¶ 22.) Indeed, Plaintiff asserts that after the meeting, both Brown and Cauffman displayed avoidant behavior towards her. (Am. Compl. ¶ 22.) Plaintiff further asserts that while the Conference failed to provide Plaintiff with any substantial assistance, the Conference provided additional support to other directors. (Am. Compl. ¶ 23.)

During Plaintiff's Fall 2016 evaluation meeting, Brown addressed some of Plaintiff's workload concerns and requested that Plaintiff prepare for him a "detailed outline of the allocation of her time." (Am. Compl. ¶¶ 25, 26.) After reviewing the outline, Brown informed Plaintiff that her job description included the work that she had outlined. (Am. Compl. ¶ 26.)

Plaintiff further alleges that sometime in early 2017, she presented her concerns during a staff meeting in front of Brown, Rowley and Director of Communications, Madeline Pillow ("Pillow"). (Am. Compl. ¶ 27.) During the meeting, Plaintiff explained that she "felt the Conference was not a good place for African-American employees and that at times she felt 'invisible.'" (Am. Compl. ¶ 27.)

In September 2017, at a Board of Laity Meeting, Plaintiff again presented her concerns about the disproportionate workload and resources to the Board. (Am. Compl. ¶ 29.) Plaintiff

further asserts that during the meeting, one Board member stated, "[l]et's be honest; the [United Methodist Church] is a white denomination." (Am. Compl. ¶ 30.) Following this meeting, Plaintiff states that the Conference again provided support and additional assistance to another director, while continuing to disregard Plaintiff's concerns. (Am. Compl. ¶ 31.)

Plaintiff once again raised her issues with Brown, who reminded Plaintiff that her responsibilities were part of her job description. (Am. Compl. ¶ 32.) However, in response, Plaintiff asserted that "it would be different if everyone were in the same boat, but . . . others are being accommodated and I'm being left to suffer. It seems very unfair. I've been stressed out for three years and no one seems to care." (Am. Compl. ¶ 32.)

On October 17, 2017, Plaintiff met with the Personnel Committee. (Am. Compl. ¶ 35.) Plaintiff alleges that the Personnel Committee attacked her for raising her concerns about her work responsibilities with the Board of Laity. (Am. Compl. ¶ 35.) Two days later, Brown requested a meeting with Plaintiff, during which Brown gave Plaintiff a Performance Improvement Plan (a "PIP"). (Am. Compl. ¶ 36.) The PIP explained that Plaintiff had "'complained to members of the Board of Laity about [her] job duties,' and 'told the Common Table Personnel Committee that [she] intend[ed] to continue the practice of complaining to Boards and agencies.'" (Am. Compl. ¶ 36 (alterations in original).) Plaintiff declined to sign the PIP. (Am. Compl. ¶ 37.)

Following the PIP incident, on October 23, 2017, Brown terminated Plaintiff's employment with the Conference, alleging that Plaintiff had acted unprofessionally with the Board of Laity and the Personnel Committee and that, in an act of insubordination, Plaintiff had accused Brown of lying in the PIP. (Am. Compl. ¶ 38.)

### B. Plaintiff's Causes of Action

Plaintiff originally filed her Complaint on November 1, 2018, and her Amended Complaint on February 7, 2019, both in the Circuit Court for the City of Richmond. Defendant removed the case to federal court on September 5, 2019 (ECF No. 1).

In Count I of the Amended Complaint, Plaintiff asserts that the Conference subjected her to race-based disparate treatment in violation of Title VII and § 1981. (Am. Compl. ¶¶ 40-47.) Specifically, she asserts that the "ferocity and speed of the organization's negative and disciplinary responses to [Plaintiff's] complaints regarding her workload and unfair treatment as compared to her Caucasian peers" demonstrate "direct evidence of illegal motivation." (Am. Compl. ¶ 45.) In Count II of the Amended Complaint, she asserts that she suffered unlawful retaliation, in violation of Title VII and § 1981, due to the complaints that she raised regarding race-based disparate treatment. (Am. Compl. ¶¶ 48-56.) Specifically, Plaintiff claims that she engaged in protected activity when she lodged complaints about her disparate workload, and because of these actions, the Conference retaliated against her by placing her on the PIP and, ultimately, terminating her employment. (Am. Compl. ¶¶ 51-53.) Plaintiff seeks a declaratory judgment finding that the acts and practices alleged constituted intentional and willful violations of her rights; injunctive relief restraining future violations of Title VII and § 1981; front pay totaling an amount to be determined at trial; back pay, plus interest; compensatory damages for past and future economic and non-economic losses, emotional distress, pain and suffering, humiliation, mental anguish, impairment of quality of life and consequential losses; punitive damages; attorney's fees; and the costs of this action. (Am. Compl. ¶ 57.)

### C. Defendant's Motion to Dismiss.

Defendant filed its Second Motion to Dismiss on October 30, 2019. (ECF No. 13.) Defendant argues that the Court should dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), or, in the alternative, for failure to state a claim pursuant to Rule 12(b)(6). (Def.'s Mem. in Supp. of the Second Mot. to Dismiss ("Def.'s Mem.") (ECF No. 14) at 2.) Specifically, Defendant argues that the Court lacks subject matter jurisdiction under Rule 12(b)(1), because the First Amendment — namely, the ecclesiastical abstention doctrine — prevents the Court from entangling itself in the matters of religious and church governance. (Def.'s Mem. at 12.) In the alternative, Defendant argues that Plaintiff has failed to state a claim for which relief can be granted under Title VII and § 1981, because Plaintiff was a ministerial employee of the Conference and, therefore, the ministerial exception bars her claims. (Def.'s Mem. at 14-15.) Finally, Defendant also seeks an award of costs and fees, because Defendant alleges that it has repeatedly informed Plaintiff that her claims are barred by the ecclesiastical abstention doctrine and ministerial exception, yet Plaintiff continues to force Defendant to "incur fees and costs refuting a meritless claim." (Def.'s Mem. at 29.)

In her Memorandum in Opposition, Plaintiff argues that neither the ecclesiastical abstention doctrine, nor the ministerial exception bar Plaintiff's claims. (Pl.'s Mem. in Opp. to Def.'s Second Mot. to Dismiss ("Pl.'s Opp.") (ECF No. 15) at 12.) In response to Defendant's Rule 12(b)(1) claims, Plaintiff argues that the ecclesiastical abstention doctrine only narrowly precludes employment decision claims based on religious preferences, not race. (Pl.'s Opp. at 12.) To counter Defendant's Rule 12(b)(6) claims, Plaintiff asserts that the ministerial exception does not apply to Plaintiff's claims, because the Conference never employed Plaintiff in a ministerial capacity. (Pl.'s Opp. at 12.) Finally, Plaintiff asserts that Defendant is not entitled to

6

costs and fees. (Pl.'s Opp. at 29.) In its Reply, Defendant reasserts that Plaintiff's claims should be dismissed for lack of subject matter jurisdiction or, in the alternative, for failure to state a claim and, further, that it is deserving of fees and costs. (Def.'s Reply Mem. in Supp. of its Second Mot. to Dismiss ("Def.'s Reply") (ECF No. 17.) at 3-5, 9.)

## II. RULE 12(b)(1) MOTION TO DISMISS

Because a motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's jurisdiction over the subject matter of the complaint, the Court will address those arguments first. *See Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 442 n.4 (4th Cir. 1999) ("[Q]uestions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case.") Defendant asserts that the ecclesiastical abstention doctrine bars Plaintiff's claims; therefore, the Court should dismiss Plaintiff's Amended Complaint for lack of subject matter jurisdiction.[1]

### A. Standard of Review.

A motion to dismiss pursuant to Rule 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint. A challenge under Rule 12(b)(1) may be facial or factual.

---

[1] While neither the Supreme Court, or the Fourth Circuit, has provided explicit guidance as to whether the ecclesiastical abstention doctrine challenge constitutes a Rule 12(b)(1) jurisdictional bar, as opposed to a Rule 12(b)(6) affirmative defense, most courts have viewed the ecclesiastical abstention doctrine through a 12(b)(1) lens. *See, e.g., Bryd v. DeVeaux*, 2019 WL 1017602, at *4 (D. Md. Mar. 4, 2019) ("Defendants first argue that the First Amendment ecclesiastical abstention doctrine presents a jurisdictional bar to Plaintiff's claim. Challenges to subject matter jurisdiction are evaluated under Fed. R. Civ. P. 12(b)(1)."); *Gregario v. Hoover*, 238 F. Supp. 3d 37, 45 (D.D.C. 2017) ("[W]ithout definitive guidance otherwise from the Supreme Court or the D.C. Circuit, the Court will analyze defendants' arguments under the ecclesiastical abstention doctrine ... under a Rule 12(b)(1) lens." (internal citation omitted)); *Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 248 n.7 (S.D.N.Y. 2014) ("It is somewhat unclear whether the First Amendment serves as jurisdictional bar or an affirmative defense to claims that require courts to review ecclesiastical decisions. Most district courts to consider the question have treated it as jurisdictional.").

*Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). If a defendant, as here, challenges the factual predicate of the court's subject matter jurisdiction, the defendant may attack "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *White v. CMA Const. Co., Inc.*, 947 F. Supp. 231, 233 (E.D. Va. 1996) (internal citations omitted). In instances where a defendant makes a factual challenge to subject matter jurisdiction, "the district court may then go beyond the allegations of the complaint and resolve the jurisdictional facts in dispute by considering evidence outside the pleadings." *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Moreover, the Court may consider evidence outside of the pleadings without converting Defendant's 12(b)(1) motion to one for summary judgment. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted).

### B. Analysis.

In their Second Motion to Dismiss, Defendant argues that the First Amendment, and specifically the ecclesiastical abstention doctrine, bars Plaintiff's claims. (Def.'s Mem. at 12.) Defendant asserts that the dispute in controversy is ecclesiastical in nature; thus, the Court lacks subject matter jurisdiction. (Def.'s Mem. at 12.) In response, Plaintiff contends that the ecclesiastical abstention doctrine does not apply here, because the claims at issue are secular in nature and cognizable under civil rights laws. (Pl.'s Opp. at 16.)

Pursuant to the First Amendment, "civil courts lack any authority to resolve disputes arising under religious law and polity, and they must defer to the highest ecclesiastical tribunal within a hierarchical church applying its religious law." *Dixon v. Edwards*, 290 F.3d 699, 714 (4th Cir. 2002) (citing *Serbian E. Orthodox Diocese for the United States & Canada v. Milivojevich*, 426 U.S. 696, 709 (1976)). Indeed, the Supreme Court has consistently recognized

that the First Amendment becomes compromised when civil courts interfere in controversies over religious doctrine and practice. *Id.* at 715 (citing *Milivojevich*, 426 U.S. at 709-10); *see also Presbyterian Church v. Hull Church*, 393 U.S. 440, 449 (1969) ("The First Amendment therefore commands civil courts to decide church . . . disputes without resolving underlying controversies over religious doctrine.").

However, the First Amendment, and more precisely the ecclesiastical abstention doctrine, does not remove all controversies that involve religious organizations from the purview of the court system.[2] *Byrd v. DeVeaux*, 2019 WL 1017602, at *5 (D. Md. Mar. 4, 2019) (citing *Jones v. Wolf*, 433 U.S. 595 (1979)); *see also Am. Union of Baptists, Inc. v. Trs. of Particular Primitive Baptist Church at Black Rock, Inc.*, 644 A.2d 1063, 1068 (Md. 1994) ("Each set of circumstances must be evaluated on an individual basis by the court to determine whether, under the facts of that particular case, a court would be forced to wander into the 'theological thicket' in order to render a decision.")

The instant case presents questions beyond the scope of the ecclesiastical abstention doctrine. And the main case upon which Defendant relies, *Serbian E. Orthodox Diocese for the United States & Canada v. Milivojevich*, proves easily distinguishable from this case. Indeed, *Milivojevich* involved disputes surrounding the defrocking of a bishop and the reorganization of Dioceses of the Serbian Orthodox Church. 426 U.S. at 698. The question at issue in *Milivojevich* was whether civil court interference with "decisions of the highest authorities of a hierarchical church" proved unconstitutional. *Id.* The Supreme Court held in part that:

> [T]he First and Fourteenth Amendments permit hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating

---

[2] Indeed, Defendant notes that it "is not asking for this Court to hold that all employment cases raised against religious institutions are free from judicial review." (Def.'s Reply at 2.)

9

> disputes over these matters. When this choice is exercised and ecclesiastical tribunals are created to decide disputes over the government and direction of subordinate bodies, the Constitution requires that civil courts accept their decisions as binding upon them.

*Id.* at 724-25.

Here, the Court need not delve into an "extensive inquiry ... into religious law and polity." *Id.* at 709. Nor would a decision by this Court "disturb the decisions of the *highest ecclesiastical tribunal*." *Id.* (emphasis added). Based on the Amended Complaint and Defendant's own evidence, the controversy at hand appears to involve Brown, Director of the Office of Connectional Ministries and Plaintiff's "immediate supervisor," terminating Plaintiff's employment. (Am. Compl. ¶ 38.; Decl. of Rev. Dr. Theodore Smith ("Smith Decl.") (ECF No. 14-1) ¶ 12.) Indeed, considering the merits of the case at hand will not require the Court to "unconstitutionally undertake[] the resolution of quintessentially religious controversies whose resolution the First Amendment commits exclusively to the highest ecclesiastical tribunals" of the Church. *Milivojevich*, 426 U.S. at 720.

Based on the record before the Court at this time, specifically, the facts alleged in the complaint, as well as the Smith Declaration and Position Description for the Director of Inclusivity and Lay Leadership Excellence,[3] the Court finds that the claims at hand are not purely and strictly ecclesiastical. Therefore, the Court declines to apply the ecclesiastical abstention doctrine and instead will next turn to Defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim.

---

[3] Both the Smith Declaration and the Position Description were attached to Defendant's Second Motion to Dismiss.

## III. RULE 12(b)(6) MOTION TO DISMISS

In the alternative, Defendant moves to dismiss Plaintiff's Amended Complaint for failure to state a claim, pursuant to Rule 12(b)(6). Defendant asserts that the ministerial exception, grounded in the Religion Clauses of the First Amendment, bars Plaintiff's claims. (Def.'s Mem. at 19.) Plaintiff responds that because the Conference did not employ her in a ministerial capacity, the ministerial exception does not apply. (Pl.'s Opp. at 17.)

### A. Standard of Review.

A complaint need only contain "a short, plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). A claim or counterclaim must state facts sufficient to "'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 1957)). Further, the facts alleged must be sufficient to "state all elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Ultimately, "[t]o survive a motion to dismiss, a claim must contain factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcraft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a Rule 12(b)(6) motion to dismiss, a court must accept as true all well-pleaded allegations. *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013). In rendering its decision, a court may consider documents attached to the complaint, Fed. R. Civ. P. 10(c), "as well as those attached to the motion[s] to dismiss, so long as they are integral to the

complaint and authentic." *Philips v. Pitt County Memorial Hospital*, 572 F.3d 176, 180 (4th Cir. 2009).[4]

Furthermore, relevant here, although a Rule 12(b)(6) motion to dismiss may not typically address the merits of any affirmative defenses, in some *limited* instances, "where facts sufficient to rule on the affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)).

B.  Analysis.

Defendant argues that the First Amendment's ministerial exception bars Plaintiff's discrimination and retaliation claims; therefore, the Court should dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6). (Def.'s Mem. at 19.) Plaintiff responds that the ministerial exception does not apply to her claims, because the Conference did not employ her in any ministerial capacity. (Pl.'s Opp. at 17.)

The Supreme Court has recognized a ministerial exception, grounded in the Establishment and Free Exercise Clauses of the First Amendment, that bars suits against religious institutions brought by ministers claiming employment termination in violation of employment discrimination laws.[5] *Hosanna-Tabor Evangelical Lutheran Church and School v.*

---

[4] The Court declines to take judicial notice of The Book of Discipline of the United Methodist Church in deciding Defendant's Second Motion to Dismiss. In reviewing, Defendant's Second Motion to Dismiss, the Court considered the facts alleged in Plaintiff's Amended Complaint, as well as the Position Description for the Director of Inclusivity and Lay Leadership Excellence, which was attached to Defendant's Second Motion to Dismiss and appears "integral to the complaint and authentic." *Philips*, 572 F.3d at 180.

[5] Although the Fourth Circuit has yet to opine on the breadth and scope of the factors laid out in *Hosanna-Tabor*, before *Hosanna-Tabor*, the Fourth Circuit had previously recognized the ministerial exception in the Title VII context. *E.E.O.C. v. Roman Catholic Diocese of Raleigh*,

*EEOC*, 565 U.S. 171, 190 (2012). The exception "precludes application of [employment discrimination laws] to claims concerning the employment relationship between a religious institution and its ministers." *Id.* at 188. For the ministerial exception to apply, the employer must be a religious institution and the employee must be a minister. *Lishu Yin v. Columbia Int'l Univ.*, 335 F. Supp. 3d 803, 812 (D.S.C. 2018) (citing *Shaliehsabou v. Hebrew Home of Greater Wash., Inc.*, 363 F.3d 299, 307-11 (4th Cir. 2004)). Because Plaintiff does not dispute that the Conference is a religious institution, the pivotal inquiry becomes whether the Conference employed Plaintiff in a ministerial capacity such that the ministerial exception bars her discrimination and retaliation claims.

To determine whether an employee qualifies as a minister under the ministerial exception, a court must, at the very least, consider: (1) the employee's formal title given to her by the religious institution; (2) the substance reflected in that title; (3) the employee's use of that title; and, (4) the functions that the employee performed for the religious institution. *Hosanna-Tabor*, 565 U.S. at 192. This analysis provided by the Supreme Court in *Hosanna-Tabor* requires a fact-specific inquiry — indeed, the Supreme Court expressly declined to "adopt a rigid formula for deciding when an employee qualifies as a minister." 565 U.S. at 189; *see also Roman Catholic Dioceses of Raleigh, N.C.*, 213 F.3d at 801 ("While the ministerial exception promotes the most cherished principles of religious liberty, its contours are not unlimited and its application in a given case requires a fact-specific inquiry. The ministerial exception does not insulate wholesale the religious employer from the operation of federal anti-discrimination statutes." (citing *Rayburn*, 772 F.2d at 1171-72)). Since *Hosanna-Tabor*, federal district courts

---

N.C., 213 F.3d 795 (4th Cir. 2000); *Rayburn v. General Conference of Seventh-Day Adventists*, 772 F.2d 1164 (4th Cir. 1985).

have come to a range of conclusions as to whether an employee served as a minister for the purposes of the ministerial exception.[6]

Pursuant to *Hosanna-Tabor* and its progeny, the Court's analysis requires a fact-intensive examination of the specific circumstances of Plaintiff's employment including Plaintiff's formal title, the substance reflected in the title, Plaintiff's use of the title and the functions that she performed. *Hosanna-Tabor*, 565 U.S. at 192. Accordingly, the resolution of the ministerial exception at this early stage would be premature. Typically, "[a] motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C.*, 980 F.2d at 951. Indeed, only in the limited circumstances "where facts sufficient to rule on the affirmative defense are alleged in the complaint, [may] the defense [] be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman.*, 494 F.3d at 464 (citing *Richmond, Fredericksburg & Potomac R.R. Co.*, 4 F.3d at 250). After due consideration of Plaintiff's Amended Complaint, as well as the documents attached to Defendant's Second Motion to

---

[6] *Compare Lishu Yin*, 335 F. Supp. 3d at 817-18 (finding that a former member at a private religious university qualified as a minister because, among other things, she required her students to pray, prayed with her students, integrated biblical materials into her courses and had notice of possible ministry responsibilities); *Biel v. St. James Sch.*, 2017 WL 5973293, at *2 (C.D. Cal. Jan. 24, 2017) (holding that a full-time fifth grade teacher was a minister under the ministerial exception because she administered weekly tests from a Catholic textbook, prayed with the students twice a day, and taught religion to students four times a week); *Curl v. Beltsville Adventist Sch.*, 2016 WL 4382686, at *10 (D. Md. Aug. 15, 2016) (finding that a music teacher at a Seventh-day Adventist school qualified under the ministerial exception), *with Goodman v. Archbishop Curley High Sch.*, 149 F. Supp. 3d 577, 584 (D. Md. 2016) (finding that a school librarian, employed by a Catholic high school, did not qualify as a minister); *Davis v. Baltimore Hebrew Congregation*, 985 F. Supp. 2d 701, 711 (D. Md. 2013) (finding that the former facilities manager at a synagogue did not fall within the ministerial exception); *Morgan v. Cent. Baptist Church of Oak Ridge*, 2013 WL 12043468, *20 (E.D. Tenn. Dec. 5, 2013) (concluding that the ministerial exception did not bar a secretary from pursuing a hostile work environment claim when her duties were primarily clerical).

Dismiss, the Court finds that there are currently insufficient facts to rule on the ministerial exception defense raised by Defendant. Instead, the ministerial exception must be addressed at a later stage after the record has been fully developed.[7]

## IV. CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's Second Motion to Dismiss (ECF No. 13).

An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: December 30, 2019

---

[7] In light of the Court's denial of Defendant's Second Motion to Dismiss, the Court will also deny Defendant's request for attorneys' fees and costs.